UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| **MELISSA MEZA, and** | § | |
| | § | |
| **ARNOLD RODRIGUEZ** | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 7:21-cv-73 |
| v. | § | |
| | § | |
| **ALL VALLEY TRUCKING, LLP,** | § | |
| **MAGIC VALLEY CONCRETE, LLC,** | § | **JURY DEMANDED** |
| **MAGIC VALLEY MANAGEMENT** | § | |
| **SERVICES, LLC,** | § | |
| **RIO VALLEY PIPE, LLC, and** | § | |
| **UPPER VALLEY MATERIALS, LLC,** | § | |
| all d/b/a CAPA | § | |
| Defendants | § | |

## ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COME NOW Plaintiffs Melissa Meza and Arnold Rodriguez, by and through their undersigned attorney of record, and file this Original Complaint against Defendants All Valley Trucking, LLP, Magic Valley Concrete, LLC, Magic Valley Management Services, LLC, Rio Valley Pipe, LLC, and Upper Valley Materials, LLC, all such Defendants doing business as "CAPA", (collectively "Defendants") to enforce their rights pursuant to Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§ 2000e *et seq.* and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, ("Title VII"), 29 U.S.C. § 206(d) ("Equal Pay Act"), and Texas Commission on Human Rights Act, Tex. Lab. Code §§ 21.001 et seq. ("TCHRA"), and would show as follows:

**I.  PARTIES**

1.1.   Plaintiff Melissa Meza ("Meza") is an individual and is a resident of the State of

1


Texas. Meza resides in Hidalgo County, Texas.

1.2. Plaintiff Arnold Rodriguez ("Rodriguez") is an individual and is a resident of the State of Texas. Rodriguez resides in Hidalgo County, Texas.

1.3. Defendant All Valley Trucking, LLP, d/b/a CAPA, is a domestic limited liability partnership doing business in the State of Texas. This Defendant can be served with process by serving Rufino Garza, who upon information and belief is a partner of this entity, at 7301 W. Expressway 83, Mission, Texas 78572.

1.4. Defendant Magic Valley Concrete, LLC, d/b/a CAPA, is a domestic limited liability company doing business in the State of Texas. This Defendant can be served with process by serving its registered agent for service of process, Rufino Garza, 7301 W. Expressway 83, Mission, Texas 78572.

1.5. Defendant Magic Valley Management Services, LLC, d/b/a CAPA, is a domestic limited liability company doing business in the State of Texas. This Defendant can be served with process by serving its registered agent for service of process, Ramiro J. Flores, 7301 W. Expressway 83, Mission, Texas 78572.

1.6. Defendant Rio Valley Pipe, LLC, d/b/a CAPA, is a domestic limited liability company doing business in the State of Texas. This Defendant can be served with process by serving its registered agent for service of process, Rufino Garza, 7301 W. Expressway 83, Mission, Texas 78572.

1.7. Defendant Upper Valley Materials, LLC, d/b/a CAPA, is a domestic limited liability company doing business in the State of Texas. This Defendant can be served with process by serving its registered agent for service of process, Rufino Garza, 7301 W. Expressway 83, Mission, Texas 78572.

1.8. At all times pertinent to this Complaint, Defendants have been a single, integrated enterprise.

1.9. At all times pertinent to this Complaint, Defendants have been joint employers of Plaintiffs.

## II. JURISDICTION AND VENUE

2.1. This Court has subject matter Jurisdiction under 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331 because this civil action arises under the Constitution, laws, or treaties of the United States; specifically, Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§ 2000e *et seq*. and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, ("Title VII), 29 U.S.C. § 206(d) ("Equal Pay Act"),

2.2. This Court has supplemental Jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

2.3. This Court has personal jurisdiction over Defendants because Defendants conduct business in Texas and have entered into relationships with Plaintiffs in Texas and committed actions in Texas that give rise to this cause of action.

2.4. Venue is proper in this district under 28 U.S.C. § 1391 inasmuch as a substantial part of the events or omissions giving rise to this claim occurred in such district.

## III. COVERAGE

3.1. At all times pertinent to this Complaint, Defendants have continuously done business in Texas and have continuously had at least 15 employees.

3.2. At all times pertinent to this Complaint, Defendants have continuously been an

employer engaged in an industry affecting commerce under Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

3.3. At all times pertinent to this Complaint, Plaintiffs were employed by Defendants.

3.4. At all times pertinent to this Complaint, Defendants have acted, directly or indirectly, in the interest of an employer or joint employer with respect to Plaintiffs.

3.5. At all times pertinent to this Complaint, Defendants have each been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

3.6. At all times pertinent to this Complaint, Defendants have each been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

3.7. At all times pertinent to this Complaint, Defendants have each been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

3.8. At all times pertinent to this Complaint, Plaintiffs were each an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 206-207.

3.9. At all times pertinent to this Complaint, Defendants have been a single, integrated enterprise.

3.10. At all times pertinent to this Complaint, Defendants have been joint employers of Plaintiffs.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.1. Plaintiff Meza filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") on, or about, August 7, 2018, alleging sex discrimination, retaliation, and Equal Pay Act violations. The EEOC issued a Letter of Determination on May 20, 2020 finding reasonable cause to believe Defendants violated the Title VII and the Equal Pay Act. The EEOC issued its "Notice of Right to Sue" on December 17, 2020, and this matter is being filed within 90 days of receipt of the "Notice of Right to Sue."

4.2. Plaintiff Rodriguez filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") on, or about, August 21, 2018, alleging retaliation. The EEOC issued a Letter of Determination on May 21, 2020 finding reasonable cause to believe Defendants violated Title VII. The EEOC issued its "Notice of Right to Sue" on December 17, 2020, and this matter is being filed within 90 days of receipt of the "Notice of Right to Sue."

## V. FACTUAL BACKGROUND

5.1. On, or about, September 11, 2017, Arnold Rodriguez was hired by Defendants as Human Resources Director.

5.2. As Human Resource Director, Rodriguez' duties included, but were not limited to managing employee issues, I-9 eligibility, preparing job descriptions, unemployment claims, worker's compensation claims, and overseeing the human resource department and staff.

5.3. Also chief among Rodriguez' job duties were monitoring and ensuring compliance with state and federal employment laws including Title VII, Equal Pay Act, Family Medical Leave

Act, Fair Labor Standards Act, the Texas Labor Code, and all other state and federal employment laws and regulations.

5.4. Immediately upon his hiring it became apparent to Rodriguez that little had been done in the past to ensure such compliance. For example, even though Defendants were federal contractors and the filing of an EEO-1 Report was required, this had never been done. All employment processes were manually performed, and no data was organized or capable of being reported.

5.5. Based upon his concerns that there seemed to have been little effort to comply with state and federal employment laws and regulations, Rodriguez almost immediately began attempting to educate and impress upon Defendants' owners, Ramiro Flores ("Flores") and Rufino Garza ("Garza"), the importance of such compliance.

5.6. On or about November 8, 2017, Rodriguez explained to the owners that the human resources policies and procedures were outdated and that this made it very difficult to comply with state and federal employment laws and regulations.

5.7. Flores stated that he believed the Defendants may not be in compliance as there had been little effort to maintain an effective human resources department in the past. However, Garza expressed no opinion.

5.8. Finally, after initial resistance by Defendants, Rodriguez convinced Defendants to acquire a very basic electronic Human Resource Information System ("HRIS") to assist with gathering, organizing, and reporting (for EEO-1 Report purposes) hiring data and employee demographics.

5.9. During the ensuing months Rodriguez continued to attempt to educate and impress upon the owners the importance of compliance with state and federal employment laws and

regulations. Often the owners expressed no interest and Garza at times made comments to the effect that he did not care what the law required, and he would run his companies as he wanted.

5.10. Still, Rodriguez continued in his efforts to educate the owners and to promote compliance. For example, in March 2018 Rodriguez made a presentation to the owners and managers on the "State of the Company." One of the topics of the presentation was potential pay inequities.

5.11. Rodriguez continued to express his concerns that compliance with laws, including antidiscrimination laws and wage & hour laws, seemed unimportant to management and owners.

5.12. Safety was another issue that concerned Rodriguez. For example, records regarding safety inspections, worker's compensation cases, and driver training were lacking. So, in May 2018, Rodriguez and Defendants' general counsel Jacqueline Salinas met with owner Rufino Garza. The purpose of the meeting was to emphasize to Garza the need to employ a person to address the needs of the company as they related to risk management, safety, and worker's compensation.

5.13. Rodriguez and Salinas presented the resume of Melissa Meza. Meza was the most qualified candidate for this position. Garza agreed to hire Meza as the "Risk Management Assistant" at $13.00 per hour but made clear he was not supportive of her performing more than recordkeeping and administrative work.

5.14. Meza was hired on May 21, 2018.

5.15. Very soon after she was hired, managers began to call upon Meza to perform various safety work including:

  a). Assisting with the Mine Safety and Health inspections;

  b). Developing safety-related forms that improved information gathering and incident reporting;

  c). Investigating accidents; and

  d). Processing worker's compensation claims.

 5.16. Because of the duties she was now performing, Meza was performing the work of a "Safety Coordinator."

 5.17. On or about June 4, 2018, Rodriguez met with owner Garza and informed him that Meza was performing the duties of "Safety Coordinator" and suggested that her pay should be increased because a previous employee, a male, performing similar duties earned approximately $50,000 annually. Garza stated that Meza's pay would remain $13.00 per hour. Garza then stated there were already too many "muchachas" working in the office.

 5.18. On or about June 11, 2018, a male was hired as "Sales Coordinator" without involvement of Human Resources. The male was to perform the same job duties as a female, Roxana Alvarado, who had been performing her job for approximately four years. The male was to be paid $46,000 annually and was to be provided use of a company vehicle. Alvarado was paid only $13.00 per hour and was not afforded use of a company vehicle.

 5.19. Rodriguez expressed his concerns to the owners that the disparity in the pay between the newly hired male Sales Coordinator and Alvarado violates the law. The owners refused to increase Alvarado's pay to an amount comparable to the newly hired male.

 5.20. Also on or about June 11, 2018, Rodriguez met with owners Garza and Flores and again raised the issue of Meza's pay since she had been performing the job duties of "Safety Coordinator." Owner Garza stated that her pay would remain at $13.00 per hour.

 5.21. Rodriguez reminded Garza that the previous person performing this job, a male, was paid a salary of $50,000 annually. Garza then stated that he did not want a woman in the position of Safety Coordinator. Flores told Garza he should not say that out loud.

5.22. Rodriguez informed Meza that her pay would remain $13.00 per hour. Meza told Rodriguez she was performing the job of Safety Coordinator and should be paid fairly.

5.23. On or about June 21, 2018, Rodriguez, Meza, and owner Flores were in a meeting. Meza discussed her plans to conduct site inspections the next day beginning with the mine in Penitas. Flores told her to cancel the inspections because she may get hurt, and that owner Garza did not want her doing that type of work and that he did not want her working around mostly men. Once Meza left the room Flores told Rodriguez the Garza "had a problem" with Meza doing safety work for Defendants.

5.24. On or about July 2, 2018, Rodriguez informed the owners and managers of different projects currently undertaken by human resources. One such project involved training of Meza with regard to safety and risk management policies and practices to support compliance.

5.25. That same day owner Garza told Rodriguez that he did not want Meza as the Safety Coordinator and that the Fleet Manager, Robert Luna, would be in charge of hiring a new Safety Coordinator. Garza further stated that Meza was not to perform any safety-related duties.

5.26. Rodriguez told Garza this decision would be problematic because Meza was already performing much of the safety-related work and was about to introduce a complete safety program.

5.27. Rodriguez also told Garza that if his decision to remove Meza's safety-related duties was because she was a woman, then this is illegal employment discrimination.

5.28. Rodriguez informed Meza of Garza's decision to remove her from her safety-related work. Meza stated that she felt like she was being discriminated against because she is a woman. Rodriguez told Meza that if she believed she was experiencing employment discrimination she should contact the EEOC.

5.29. In addition to Rodriguez, Meza also complained about this gender and pay discrimination to Angie Arredondo, another HR employee, who also advised Meza of her right to report these violations to the EEOC.

5.30. Meza additionally reported these violations to general counsel Salinas.

5.31. Also on or about July 2, 2018 Dan Doerrfeld, Defendants' Director of Business Development and Sales, notified Rodriguez that there was a new position available, Customer Service Coordinator, for which he wanted to interview Meza. Doerrfeld stated that he reviewed Meza's resume and she had sales coordinator experience, as well as an outgoing, high-energy personality that was essential for this position.

5.32. Doerrfeld further stated this new position would be performing the same work as a current position, Central Dispatcher. Doerrfeld further stated the Central Dispatcher, a person called "Woody", was making over $45,000 a year, plus commission, so he wanted to start the new Customer Service Coordinator at about $40,000. However, Doerrfeld stated, Garza would likely not approve $40,000 so he would request a starting salary of $38,000 for Meza then in three months ask that it be increased to $40,000.

5.33. Doerrfeld interviewed Meza for the position of Customer Service Coordinator. Doerrfeld told Meza that, with the owners' approval, the starting annual salary for the position would be $38,000 with a potential increase to $40,000 after three months.

5.34. On or about July 9, 2018 Dan Doerrfeld and Rodriguez met with the company owners Garza and Flores to discuss placing Meza in the new position of Customer Service Coordinator.

5.35. Doerrfeld requested to hire Melissa at $38,000 annually then three months later, based on performance, increase the pay to $40,000.

5.36. Garza agreed to allow Doerrfeld to hire Melissa as Customer Service Coordinator at $13.00 an hour. Doerrfeld and Rodriguez expressed to Garza that hiring Meza, a female, at $13.00 an hour to do the same work as a male, Woody, would be discriminatory. Garza stated that he didn't care about that and that he was the one who determined what people were paid.

5.37. Also on or about July 9, 2018 Meza expressed to Rodriguez that she believed she was being discriminated against because of her sex, female. Arnold Rodriguez advised Melissa that she could make her concern known to the EEOC.

5.38. Despite Meza's numerous complaints of gender discrimination, Defendants did nothing to remedy the violations.

5.39. Also on or about July 9, 2018, Rodriguez and Angie Arredondo met with the general counsel Salinas. Rodriguez and Arredondo expressed their concerns about sexual discrimination regarding Meza and Roxana Alvarado. Salinas stated that she agreed that owner Garza's behavior was discriminatory. Salinas stated that she would speak to Garza about the issue.

5.40. On or about July 10, 2018, Rodriguez informed owner Garza of a well-qualified applicant for the Safety Coordinator position whose name was Diana Combs. Garza again stated that Robert Luna was tasked with hiring the new Safety Coordinator, but that Garza would not approve of a woman being hired for the Safety Coordinator position. Garza stated that he would approve of a woman being hired as a receptionist or to work in HR, but not as a Safety Coordinator.

5.41. Later that same day, Rodriguez told general counsel Salinas of his conversation with Owner Garza during which Garza stated he would not allow a woman to be hired as Safety Coordinator.

5.42. On or about July 12, 2018 Defendants' CFO Montez instructed Rodriguez to terminate Meza. Rodriguez asked why Meza was being terminated. Montez responded that

11

Rodriguez should state that Meza's role was no longer required or to use any other reason so long as Meza was terminated.

5.43. Rodriguez notified Meza of the Defendants decision to terminate her. Meza responded that she believed her termination to be discriminatory based on her sex. Rodriguez advised Meza that she could present her concerns regarding discrimination to the EEOC, but that he was directed to terminate her effective immediately.

5.44. Meza was terminated because of her gender, because she requested similar pay for performing similar work performed by males for Defendants, and because she engaged in protected activity by complaining of and thereby opposing gender discrimination and equal pay violations.

5.45. On or about July 19, 2018 Rodriguez met with Robert Luna, the Fleet Manager who had been assigned the duty of hiring a new Safety Coordinator.  Rodriguez discussed with Luna an applicant that Rodriguez had interviewed by telephone and had referred to Luna.  The applicant, Diana Combs, a female, was qualified, and bilingual.  Luna stated that it didn't matter what Combs qualifications were, Garza would never hire a female for that role.

5.46. On or about July 30, 2018, Rodriguez sent an email to owners Garza and Flores stating his concern that Defendants had previously failed to comply with antidiscrimination laws and that Defendants fail to view such compliance as important.

5.47. After Meza's termination, Rodriguez arranged and attended a meeting, along with Meza and other employees, with a private attorney to discuss Defendants' discriminatory employment practices and to seek legal advice regarding how best to protect employees from such practices and methods of seeking legal redress.

5.48. Defendants became aware of Rodriguez' involvement with this attorney meeting.

12

5.49. On or about August 6, 2018 in-house general counsel Salinas and CFO Montez met with Arnold Rodriguez and notified him of his termination due to the "failure of the HR department to progress." Salinas stated that the termination is irreversible, and Rodriguez was to leave immediately. Rodriguez gathered his personal belongings in the office, with Montez checking every item Rodriguez removed from the office.

5.50. Rodriguez was terminated because he requested similar pay for females performing similar work performed by males for Defendants, because he engaged in protected activity by complaining of and thereby opposing gender discrimination and equal pay violations, and because he informed employees of their right to file discrimination charges with the EEOC and assisted them with obtaining legal advice and guidance.

5.51. After terminating the employment of Rodriguez in retaliation for his opposing Defendants' discriminatory employment practices, Defendants further retaliated against Rodriguez by making defamatory and disparaging comments about him.

5.52. The above stated recitation of facts is intended to provide the factual background for this lawsuit and is not intended to be a full, complete, and comprehensive statement of each and every fact relevant to this case.

## VI. CAUSES OF ACTION:

**A.  Melissa Meza**

### Violation of Title VII
### and Texas Commission on Human Rights Act

6.1. From about May 21, 2018, until about July 12, 2018, Defendants violated Title VII, 42 U.S.C. § 2000e-2 and Texas Labor Code § 21.051 by denying Meza employment positions and

by paying her a lower wage than that paid to male employees performing the same or similar work under same or similar conditions because of her sex.

6.2. The effect of the practices complained of herein has been to deprive Meza of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

6.3. The unlawful employment practices complained of herein were intentional.

6.4. The unlawful employment practices complained of herein were done with malice or with reckless indifference to the federally protected rights of Meza.

6.5. As a result of Defendant's violations of Title VII, Meza has suffered mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life, and actual damages in the form of lost wages and benefits (past and future), and other losses.

6.6. As a result of these violations of Title VII and TCHRA, Meza requests that she be awarded all actual, compensatory, and punitive damages to which she is entitled pursuant to Title VII and TCHRA, as well as all equitable relief, attorney's fees, and costs.

### Violation of Equal Pay Act
### and Texas Commission on Human Rights Act

6.7. From about May 21, 2018, until about July 12, 2018, Defendants violated the FLSA, 29 U.S.C. § 206(d)(1) and § 215(a)(2), and Texas Labor Code § 21.051 by paying Meza a lower wage than that paid to male employees for equal work on jobs the performance of which required substantially equal skill, effort, and responsibility, and which were performed under similar working conditions.

6.8. As a result of the acts complained of herein, Defendants have unlawfully withheld payment of wages due to Meza.

6.9. Defendants willfully violated Plaintiff's rights under the Equal Pay Act.

6.10. As a result of Defendant's unlawful conduct, Plaintiff is entitled to actual and compensatory damages, including the amount of back pay equal to the difference between the amount she was paid and the amount her male counterpart was paid.

6.11. Defendants' violations as described herein were not based in good faith nor did Defendants have a reasonable basis to believe their conduct complied with the Equal Pay Act. Therefore, Plaintiff seeks and is entitled to an award of liquidated damages pursuant to 29 U.S.C. § 216(b).

6.12. Plaintiff also seeks compensation for expenses and costs of court that will be incurred in this action. Plaintiff is also entitled to reasonable and necessary attorney's fees pursuant to 29 U.S.C. § 216(b).

### Violation of Title VII, Equal Pay Act, and Texas Commission on Human Rights Act
### RETALIATION

6.13. From about May 21, 2018, until about July 12, 2018, Defendants violated Title VII, 42 U.S.C. § 2000e-3, FLSA, 29 U.S.C. § 215(a)(3), and Texas Labor Code § 21.055 by retaliating against Meza.

6.14. As described herein Meza engaged in protected activity and, because she engaged in such protected activity, Meza was subjected to one or more adverse employment actions including continued deprivation of employment positions, wages less than those paid to male employee comparators, and termination of employment.

6.15. Defendants' violations as described herein were not based in good faith nor did Defendants have a reasonable basis to believe their conduct complied with the Equal Pay Act.

6.16. The unlawful practices complained of herein were intentional, were done with malice or with reckless indifference to the federally protected rights of Meza and were willful.

6.17. As a result of Defendants' unlawful retaliation, Meza has suffered mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life, and actual damages in the form of lost wages and benefits (past and future), and other losses.

6.18. As a result of Defendants' unlawful retaliation, Meza requests that she be awarded all actual, compensatory, punitive, and liquidated damages to which she is entitled pursuant to Title VII, the Equal Pay Act, and the Texas Commission on Human Rights Act, and as well as all equitable relief, attorney's fees, and costs.

**B.     Arnold Rodriguez**

**Violation of Title VII, Equal Pay Act, and Texas Commission on Human Rights Act
RETALIATION**

6.19. Defendants violated Title VII, 42 U.S.C. § 2000e-3, FLSA, 29 U.S.C. § 215(a)(3), and Texas Labor Code § 21.055 by retaliating against Rodriguez.

6.20. As described herein Rodriguez engaged in protected activity and, because he engaged in such protected activity, Rodriguez was subjected to one or more adverse employment actions including termination of employment. Additionally, Defendants made defamatory and disparaging comments about him.

6.21. Defendants' violations as described herein were not based in good faith nor did Defendants have a reasonable basis to believe their conduct complied with the Equal Pay Act.

6.22. The unlawful practices complained of herein were intentional, were done with malice or with reckless indifference to the federally protected rights of Rodriguez and were willful.

6.23. As a result of Defendants' unlawful retaliation, Rodriguez has suffered mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life, and actual damages in the form of lost wages and benefits (past and future), and other losses.

6.24. As a result of Defendants' unlawful retaliation, Rodriguez requests that he be awarded all actual, compensatory, punitive, and liquidated damages to which he is entitled pursuant to Title VII, the Equal Pay Act, and the Texas Commission on Human Rights Act, and as well as all equitable relief, attorney's fees, and costs.

## VII. Injunction

7.1. The conduct of Defendants as alleged herein was intentional and Plaintiffs request the Defendants be enjoined from engaging in such unlawful employment practices and that the Court order such other affirmative action as the Court may deem appropriate.

## VIII. JURY TRIAL DEMAND

8.1 Plaintiffs demand a jury trial on all issues so triable.

## IX. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendant as follows:

a. Determining that Defendants engaged in unlawful intentional discriminatory employment practices as alleged herein;

b. Determining that Defendants engaged in discriminatory employment practices with malice or with reckless indifference to the federally protected rights of Plaintiffs, and with conscious disregard to such rights;

c. Determining that Defendants actions were not based in good faith nor did Defendants have a reasonable basis to believe their conduct complied with the Equal Pay Act;

d.  Enjoining Defendants from engaging in such unlawful employment practices and reinstating Plaintiffs;

e.  Awarding Plaintiffs back pay;

f.  Awarding Plaintiffs front pay;

g.  Awarding Plaintiffs compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

h.  Awarding Plaintiffs punitive damages;

i.  Awarding Plaintiffs pre- and post-judgment interest;

j.  Awarding Plaintiffs liquidated damages;

k.  Awarding Plaintiffs costs and expenses, including reasonable attorney's fees and expert's fees;

l.  Awarding Plaintiffs pecuniary damages for costs related to seeking subsequent employment; and

m.  The award of such other and further relief, both at law and in equity, to which Plaintiffs may be justly entitled under Title VII, the FLSA (Equal Pay Act), and TCHRA.

Respectfully submitted:

By: */s/ David G. Langenfeld*
**David G. Langenfeld**
Attorney-in-Charge
State Bar No. 11911325
Fed. ID No. 15878
LEICHTER LAW FIRM
1602 East 7th Street
Austin, TX  78702
Tel.:  (512) 495-9995
Fax:  (512) 482-0164
Email:  david@leichterlaw.com

**ATTORNEYS FOR PLAINTIFFS**